# EXHIBIT B



# CERTIFICATION

TransPerfect is globally certified under the standards ISO 9001:2015 and ISO 17100:2015. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

| | |
|---|---|
| File Name(s): | Agreement dated 28 April 2010 - "The Preliminary Share Restructuring Agreement" |
| Source Language(s) | Simplified Chinese |
| Target Language(s) | English |

Authorized Signature:

*[signature: M K Cheng]*   *[stamp: TransPerfect Translations Ltd 譯傳有限公司]*

Name:   Maggie Cheng
Title:   Project Coordinator
Date:   Sept. 17th, 2018

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS
TRANSPERFECT TRANSLATIONS LIMITED  |  UNITS 1704-5, 17F, UNIVERSAL TRADE CENTRE, 3-5A ARBUTHNOT ROAD, CENTRAL, HONG KONG
T +852 2292.9900  F +852 2545.7781  |  WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

⑤

[Original handwritten text is indicated in italics]

Document Evidence 1 *Fen Ke Wen Jun*

Agreement on the Implementation of

"The Preliminary Share Restructuring Agreement"

This agreement is entered into by the following parties on 28 April 2010:

(A) Oasis Investment Group Limited, a company limited by shares incorporated in the British Virgin Islands, with registered address at [ ] (hereafter referred to as "Oasis Investment");

(B) Ms Naifen YU, an American citizen; USA passport number: 710714118 and mailing address at Room 419, Oasis Building, 555 West Zhongshan Road, Shanghai, postcode: 200051;

(C) Ms Naiwen YU, a Chinese citizen; Chinese ID card number: 310101196304040864 and mailing address at Room 419, Oasis Building, 555 West Zhongshan Road, Shanghai, postcode: 200051;

(D) Ms Naijun YU, a Chinese citizen; Chinese ID card number: 310106197207062822 and mailing address at Room 419, Oasis Building, 555 West Zhongshan Road, Shanghai, postcode: 200051;

(E) Mr Zhengguang KE, a Chinese citizen; Chinese ID card number: 310109195601033237 and mailing address at Room 419, Oasis Building, 555 West Zhongshan Road, Shanghai, postcode: 200051;

(F) Mr Hongbiao XU, a Chinese citizen; Chinese ID card number: 310104196403192854 and mailing address at Room 419, Oasis Building, 555 West Zhongshan Road, Shanghai, postcode: 200051;

(G) Cheergain International Group Limited, a company limited by shares incorporated in the British Virgin Islands with its registered address at [ ];

(H) Focus Town Limited, a company limited by shares incorporated in the British Virgin Islands with its registered address at [ ];

(I) Greencourt Properties Limited, a company limited by shares incorporated in Hong Kong with its registered address at [ ] (hereafter referred to as "Greencourt Properties");

(J) Shanghai Oasis Kechuang Shengtai Keji Limited, a company limited by shares incorporated in Fengxian District, Shanghai with its registered address is [ ] (hereafter referred to as "Oasis Kechuang").

1

AP_Legal – 104479225.1

*Fen Ke Wen Jun*

Ms Naifen YU, Ms Naiwen YU and Ms Naijun YU are collectively referred to as the "Controlling Shareholders" of Oasis Investment; Mr Zhengguang KE (or Cheergain International Group Limited owned by him) and Mr Hongbiao XU (or Focus Town Limited owned by him) are collectively referred to as the "Non-controlling Shareholders" of Oasis Investment. Oasis Investment, the Controlling Shareholders and the Non-controlling Shareholders, when they are addressed individually each is referred to as a "Party", and collectively as the "Parties".

Whereas :

1. The Controlling Shareholders and the Non-controlling Shareholders had adopted the "Shareholder Resolutions" regarding share restructuring on 24 March 2009, and signed the "Meeting Minutes" on 4 September 2009 and the "Preliminary Share Restructuring Agreement" (the "Restructuring Agreement") on 9 November 2009. The above three documents set out the basic principles and transaction framework for Oasis Investment's repurchase of shares held by the Non-controlling Shareholders.

2. Under clauses 2.1 and 2.2 of the Restructuring Agreement, Oasis Investment is to pay repurchase consideration that shall consist of an amount in foreign currency which amount shall be equivalent to RMB 250 million, plus 100% of the equity in Shanghai [Greencourt] Four-Season-Flower-City Property Development Co., Limited (hereafter referred to as "SJHC"). Issues relating to the repurchase payment schedule and payment method were agreed to be negotiated separately by the Parties.

3. In order to address the issues relating specifically to the repurchase, complete all the transactions specified in the Restructuring Agreement as soon as possible, and to reduce the transaction cost as well as time cost for all the Parties involved, the Parties agree to sign this agreement to specify the repurchase price, the payment schedule, the payment method and any other issues involved.

After amicable negotiations, all Parties unanimously reached the following decisions:

Article 1     Equity Transfer Prior to the Repurchase by Oasis Investment

1.1     Due to commercial needs, Mr Zhengguang KE decided to transfer his equity in Oasis Investment to Cheergain International Group Limited, and Mr Hongbiao XU to transfer his equity in Oasis Investment to Focus Town Limited. After the completion of the aforementioned transfer, Oasis Investment is to repurchase its shares held by Cheergain International Group Limited and Focus Town Limited (hereafter, the aforementioned arrangement is to be referred to as the "Equity Transfer Prior to the Repurchase"). Oasis Investment and the Controlling Shareholders agreed to the aforementioned arrangement and are willing to provide the necessary assistance.

1.2     Non-controlling Shareholders are responsible for the tax and expenses associated with the aforementioned Equity Transfer Prior to the Repurchase.

[Original handwritten text is indicated in italics]

*Fen Ke Wen Jun*

Article 2        Oasis Investment's Repurchase Consideration

2.1    Cash Consideration and its Payment Arrangement. Under the Restructuring Agreement, the cash component of Oasis Investment's repurchase consideration is an amount of foreign currency which is equivalent to RMB 250 million ("Cash Consideration"). All parties agree that when the actual payment is made, the amount of Cash Consideration is to be adjusted according to the following:

2.1.1  An amount of approximately RMB 41 million resulting from previous transactions for which the Non-controlling Shareholders shall be held liable shall be deducted from the Cash Consideration;

2.1.2  A conditional payment of a one-off additional compensation in the amount of RMB 30 million ("Additional Compensation") that Oasis Investment and the Controlling Shareholders are willing to pay shall be added to the Cash Consideration. The condition for this Additional Compensation is that Oasis Investment's share repurchase and payment of consideration will be completed pursuant to the provisions of the Restructuring Agreement and this ~~supplemental~~ agreement, and there is no major dispute between the Parties.

2.1.3  All parties agreed that, following the signing of this Agreement, when the payment of the relevant equity consideration is to be made and when the amount of Cash Consideration is to adjusted, the parties would then sign a supplementary agreement.

2.1.4  All parties agreed that the cash portion of the repurchase consideration shall be divided into two equal portions in Hong Kong dollars in Hong Kong and paid in full and on time to the bank accounts of Cheergain International and Focus Town Limited provided by the Non-controlling Shareholders at the time as determined in the article below.

2.2    Conditions and Schedule for the Payment of Cash Consideration

2.2.1  All Parties agree that the cash component of the repurchase is to be paid according to the following schedule:

(1)    Hong Kong dollars equivalent to RMB 80 million ("1st Payment") is to be paid within 10 days once the following prerequisites are met:

    (a)  All Parties have signed this ~~supplemental~~ agreement;

    (b)  Non-controlling Shareholders have signed the Resolution of Oasis Investment Shareholders' Meeting on the repurchase of the Non-controlling Shareholders' equity.

(2)    Hong Kong dollars equivalent to RMB 20 million ("2nd Payment") should be paid before 30 June 2011.

3

(3) The remaining amount equivalent to RMB 150 million in Hong Kong dollars ("3rd Payment"), being the final payment subject to those adjustments agreed to or confirmed by all Parties under provisions of Article (4) below) is to be paid by 31 December 2012 once the following prerequisites are met:

    (a) SJHC's equity transfer being approved by the government and the registration of the transfer being completed;

    (b) Oasis Investment completing the registration of the change of shareholders that is necessary for the repurchase of the Non-controlling Shareholders' equity;

    (c) Non-controlling Shareholders and Controlling Shareholders reaching an agreement on the payment arrangement in respect of the Cash Consideration and various adjustments to the amount specified in the aforementioned Article 2.1;

    (d) Non-controlling Shareholders confirming that the payment of equity consideration specified in Article 2.3.5 below being completed and there being no dispute among all parties;

    (e) Both of the Shanghai Real Estate Sale and Purchase Contract mentioned in Article 3.1 and the Shanghai Real Estate Presale Contract mentioned in Article 3.2 being signed and the registration of transfer [of ownership] or the registration of presale with the Real Estate Registration Authority being completed.

(4) Adjustments to the Amount of Cash Consideration

All Parties agree that, before the payment of the 3rd Payment, under provisions of the following Articles, all parties shall calculate and determine the adjustments to the amount of Cash Consideration, and take the adjusted amount as the final amount for purposes of the 3rd Payment.

    (a) Under the provisions of the Restructuring Agreement and this agreement, Oasis Investment and Controlling Shareholders shall use 100% of SJHC's equity as part of the share repurchase consideration ("Equity Consideration"). If under any laws and regulations, such equity transfer must indicate a price and that this price must actually be paid, the actual amount (net amount after deduction of tax and fees) paid by the Non-Controlling Shareholders to Oasis Investment and the Controlling Shareholders for the equity transfer shall be added to the Cash Consideration;

    (b) The sharing of the amount stipulated in Articles 2.1.1 and 2.1.2 above shall be reflected in the final amount of the 3rd Payment;

    (c) Under provisions of other Articles of this agreement, all tax and expenses that shall be paid by the parties shall be reflected in the final amount of the 3rd Payment.

[Original handwritten text is indicated in italics]

*Fen Ke Wen Jun*

2.3 Payment Method of Equity Consideration. According to the Restructuring Agreement, the equity portion of Oasis Investment's repurchase consideration is calculated as 100% equity of Shanghai Greencourt Four-Season-Flower-City Property Development Co., Limited ("Equity Consideration"). Such Equity Consideration shall be paid in the following methods:

2.3.1 Oasis Investment has newly incorporated Shibang Company Ltd ("Shibang Company") in Hong Kong and has arranged for Shibang Company to acquire 80% of the equity interest in Shanghai Greencourt Four-Season-Flower-City Property Development Co., Limited (hereafter referred to as "SJHC") held by Greencourt Properties Limited, a subsidiary of Oasis Investment in Hong Kong. After the completion of the said equity acquisition, Oasis Investment shall sign the "Equity Purchase Option Agreement" with Cheergain International Group [Limited] and Focus Town Limited and agree that upon the expiration of the entrustment period mentioned in Article 2.3.2 below, 100% of the equity of Shibang Company shall be transferred to Cheergain International Group [Limited] and Focus Town Limited at a consideration of HKD 1.

2.3.2 All Parties Agree That: After Oasis Investment's signing of the Equity Purchase Option Agreement for the equity transfer of Shibang Company to Cheergain International Group Limited and Focus Town Limited, Greencourt Properties is to sign the relevant Entrustment Agreement with Cheergain International Group Limited and Focus Town Limited. This agreement shall stipulate that: (1) Cheergain International Group Limited and Focus Town Limited are entrusted by Greencourt Properties to manage Shibang Company and to exercise the shareholders' rights on its behalf for three years (the "entrustment period"); (2) during the entrustment period, the Non-controlling Shareholders are responsible for all the debts and claims, risks and liabilities of Shibang Company and SJHC. If for any reason the Controlling Shareholders, Oasis Investment or Greencourt Properties are required to bear the debts and claims, risks and liabilities of Shibang Company or SJHC during the entrustment term, the Non-controlling Shareholders are required to fully compensate the Controlling Shareholders, Oasis Investment and Greencourt Properties.

2.3.3 The remaining 20% of the equity of SJHC currently held by Oasis Kechuang Shengtai Limited, a subsidiary of Oasis Investment, is to be transferred to a domestic company in China appointed by the Non-controlling Shareholders ("Onshore Payment of Equity Consideration"). If under the laws of the People's Republic of China, an actual payment of consideration is required to be made for such equity transfer, the provisions of the abovementioned Article 2.2.1(4)(a) shall apply.

2.3.4 All Parties Agree That: The Non-controlling Shareholders shall be responsible for all the tax and expenses incurred due to the Onshore Payment of Equity Consideration, as well as the tax and expenses incurred offshore due to the entrustment arrangement made by Shibang Company and the equity transfer of Shibang Company to Cheergain International Group Limited and Focus Town Limited. Apart from this, the sharing of the tax and expenses relating to the payment of Equity Consideration is to be negotiated by all the Parties in due course. All procedures relating to the onshore and offshore payment of Equity Consideration, such as applications, registrations and government procedures, etc. are to be

[Original handwritten text is indicated in italics]

undertaken by the Non-controlling Shareholders while the Controlling Shareholders and Oasis Investment are to provide the necessary assistance.

6

AP_Legal – 104479225.1

[Original handwritten text is indicated in italics]     *Fen Ke Wen Jun*

2.3.5   As a result of Oasis Investment and the Controlling Shareholders having already transferred the management rights of SJHC to the Non-controlling Shareholders before this agreement is signed, all Parties agree that, upon Oasis Investment and the Controlling Shareholders having signed the Equity Purchase Option Agreement specified in the aforementioned Article 2.3.1 and the Entrustment Agreement specified in Article 2.3.2, the payment of Equity Consideration is to be deemed as complete.

Article 3   Other Agreements Relating to Oasis Investment's Repurchase and Repurchase Consideration

3.1   Within 30 days of the signing of this agreement, Oasis Investment and the Controlling Shareholders shall procure a subsidiary, namely, Shanghai Greencourt Real Estate Development Limited to sign the "Shanghai Real Estate Sale and Purchase Contract" with the Non-controlling Shareholders or their nominated third party, and undertake to transfer approximate 8000 m$^2$ of commercial space which shall meet the appropriate delivery standards (specifically, the property includes approximately 6000 m$^2$ of commercial space on the third level along the streetside of Phase 1 of Greencourt Sun City Commercial Building, and all the commercial space of approximately 2000 m$^2$ of the west side of the Central Plaza of Phase 2 of Greencourt Sun City) at the Jiuting Greencourt Sun City Real Estate Project in Songjiang District, to the Non-controlling Shareholders or their nominated third party. For the avoidance of doubt, (1) when the Shanghai Real Estate Sale and Purchase Contract is signed, Oasis Investment and the Controlling Shareholders shall transfer the right to use such commercial space to the Non-controlling Shareholders or their nominated third party, and the Non-controlling Shareholders or their nominated third party are to receive rental income and other earnings after the transfer; and (2) by 30 June 2011, Oasis Investment and the Controlling Shareholders shall transfer the ownership of such commercial space to the Non-controlling Shareholders or their nominated third party.

3.2   At the time of signing the aforementioned "Shanghai Real Estate Sale and Purchase Contract", SJHC shall sign the "Villa Order Contract" with Oasis Investment and the Controlling Shareholders, to transfer the SJHC-developed two A2-type villas (building area of approximately 1200 m$^2$ each as set out on a building plan, which building plan Oasis Investment and the Controlling Shareholders have received and have been notified of the delivery standards, and both confirmed the actual price as stated below) located on the Central Island, Peninsula Villa Project, Fengpu Industrial Area, Fengxian District, Shanghai City, to Oasis Investment or their nominated third party once the villas meet the delivery standards. For the avoidance of doubt, the Non-controlling Shareholders shall procure SJHC to sign the "Shanghai Real Estate Presale Contract" with Oasis Investment or the third party nominated by the Controlling Shareholders on 30 June 2011 and to complete the presale registration of such villas.

3.3   All Parties Confirm: the properties involved in the aforementioned "Shanghai Real Estate Sale and Purchase Contract" and the "Villa Order Contract" (or the Shanghai Real Estate Presale Contract) are all priced at RMB 72 million. Because the prices of the properties involved are equal, for the purposes of this agreement, the considerations under the contracts are to be set off against each other (whether or not such offset is plausible from an accounting perspective, and that the Parties agree that no actual payment is to be made).

3.4 Brand Name: From the date when this agreement is signed, all the brand names and other intellectual property of Oasis Investment and its subsidiaries are to be owned by the Controlling Shareholders, except with respect to SJHC and its property naming rights, logo, trade mark which have been obtained by the Non-controlling Shareholders under this agreement (and only to be used within the current business scope of SJHC, and not to be used for any new business). Without the approval of the Controlling Shareholders, the Non-controlling Shareholders shall not continue to use such brand names and other intellectual property.

3.5 Appointments: The Parties agree that from the date when the 1st Payment is paid, the Non-controlling Shareholders shall be considered to have resigned from all the positions they hold in Oasis Investment and its subsidiaries (except the positions they hold in SJHC), and the Controlling Shareholders shall be considered to have resigned from all the positions they hold in SJHC. Under provisions of this Article, Oasis Investment and its subsidiaries may complete procedures relating to the change of directors, supervisors and other posts.

3.6 Related party transactions: With effect from the signing of this agreement, the related party transactions between SJHC and Oasis Investment and their subsidiaries shall be terminated; all pre-existing debts and claims shall be settled within one month. This excludes situations that are otherwise stipulated in this agreement.

3.7 Promise: The Non-controlling Shareholders promise not to make any claims against Oasis Investment, the Controlling Shareholders and their subsidiaries worldwide on the condition that this agreement is fully and timely fulfilled.

3.8 SJHC's business documents, license and company seal shall be transferred to the Non-controlling Shareholders once the 1st Payment is paid.

Article 4    Miscellaneous

4.1 For matters not addressed in this Agreement, the stipulations of the Restructuring Agreement shall prevail. For matters not addressed in the Restructuring Agreement and this Agreement, the parties concerned shall enter into supplementary agreements through friendly negotiations, and those supplementary agreements and this Agreement shall have the same effect.

4.2 Any conflicts, disputes and claims resulting from this agreement or related to this agreement, breach of contract, termination of contract and void of contract (hereafter referred to as "disputes") shall be dealt with through amicable negotiations by all Parties. If the negotiation fails, any Party is entitled to submit the dispute to the Hong Kong International Arbitration Centre for arbitration. The arbitration is to be conducted in Chinese. The arbitration tribunal is to consist of three arbitrators. Oasis Investment and the Controlling Shareholders are entitled to nominate one arbitrator, the Non-controlling Shareholders are entitled to nominate another arbitrator, and the third arbitrator, who will be the chief arbitrator, is to be nominated by the Chairperson of the Hong Kong International Arbitration Centre. The outcome of arbitration is final and binding on all Parties.

4.3 This agreement is to take effect on the date when it is signed.

8

AP_Legal – 104479225.1

[Original handwritten text is indicated in italics]                                      *Fen Ke Wen Jun*

4.4     This agreement is written in Chinese and has ten copies; each Party holds one copy.

Signed by:

Oasis Investment Group Limited

[signature]_____          [signature]_____

Naifen YU                                                                  Zhengguang KE


[signature]_____          [signature]_____

Naiwen YU                                                                  Cheergain International Group Limited


[signature]_____          [signature]_____

Naijun YU                                                                  Hongbiao XU


[signature]_____          [signature]_____

Greencourt Properties Limited                                 Focus Town Limited


_____

Shanghai Oasis Kechuang Shengtai Keji Limited (seal)

[illegible seal]


                                                          For and on behalf of Oasis Investment Group Limited

                                                          [signature]_____

                                                          Authorised Signature(s)


9

AP_Legal – 104479225.1

Case 8:20-cv-02260-PWG   Document 1-2   Filed 08/05/20   Page 12 of 12