# EXHIBIT D

**Morningside**
Translations

# TRANSLATION CERTIFICATION

Date: July 29, 2020

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- Chinese (PRC)

To:

- English (USA)

The documents are designated as:
- 20200316 A13028 Final Award

Eugene Li, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

_____
Signature of Eugene Li

Arbitration under the *2008 Hong Kong International Arbitration Centre Administered Arbitration Rules*
Case No.: HKIAC/A13028

| | |
|---|---|
| **Xu Hongbiao** | **First Claimant** |
| **Estate of Ke Zhengguang** | **Second Claimant** |
| | **(Collectively referred to as the "Claimants")** |
| | |
| **Oasis Investment Group Limited** | **First Respondent** |
| **(Oasis Investment Group Limited)** | |
| **Yu Stephany Naifen** | **Second Respondent** |
| **Yu Naiwen** | **Third Respondent** |
| **Yu Naijun** | **Fourth Respondent** |
| | **(Collectively referred to as the** |
| | **"Respondents")** |

---

### Final Award on Arbitration fees and Interest

---

### A. <u>Preamble</u>

1.　　On February 28, 2018, the arbitral tribunal made a final award on the case (excluding the arbitration fees and interest). The final award was delivered to the parties by HKIAC on March 7, 2018.

2.　　On December 19, 2018, the arbitration tribunal issued their decision on Interpretation, Correction and Supplementation to the Arbitration Award based on the *Second Claimant's Application for Interpretation/Correction/Supplementation* submitted by the second Claimant. The decision was delivered by HKIAC to the parties on January 9, 2019.

1

3.      According to the email of the arbitration tribunal on September 21, 2018, the parties were directed to deal with the issues related to arbitration fees and interest after the arbitration tribunal made decisions on the application for interpretation, correction and supplementation.

4.      On February 11, 2019, the first Claimant sent an email to the arbitration tribunal, attaching again the statements for the arbitration fees and interest submitted by the first Claimant to the arbitration tribunal on April 21, 2018.

5.      The first Claimant requests the arbitration tribunal to make the following directions on the issues related to the arbitration fees and interest:

(1)      The second Claimant and the Respondents shall, within 14 days, submit a written submission to the arbitral tribunal on the issues related to the arbitration fees and interest.
(2)      The first Claimant requests to submit a response to the second Claimant's and Respondents' submissions to the arbitral tribunal within 14 days.

6. On February 15, 2019, the second Claimant informed the arbitration tribunal regarding the schedule on issues related to the arbitration fees and interest which were proposed by the first Claimant on February 11, 2019. The second Claimant and the Respondents had carried out negotiations and reached a unanimous agreement on the following views, which they hoped to be adopted by the arbitration tribunal.

(1)      Within 21 days from the date when the arbitration tribunal directs the parties to start negotiations for issues related to the arbitration fees and interest, the parties shall firstly carry out negotiations for issues related to the arbitration fees and interest on a without prejudice basis and try to reach settlement.

(2)      If the parties fail to reach settlements on all the issues related to the arbitration fees and interest at the end of the 21 days, the parties shall, within 35 days thereafter, submit their respective statements to the arbitral tribunal for the issues related to the arbitration fees and interest that have not been settled. The statements shall include the liabilities of the parties on the issues related to the arbitration fees and interest, the amount claimed, and the evidentiary materials and legal basis for the statements of the parties.

(3)    There is no need to provide information other than each bill amount in the bill of attorney's fees and those protected by privilege in other evidentiary materials.

(4)    Each party shall submit its own response to the other party's statements within 21 days after submitting the statements for the issues related to the arbitration fees and interest.

7. On February 19, 2019, the arbitral tribunal gave the following directions for the parties to follow:

(1)    The parties shall carry out negotiations for the issues related to the arbitration fees and interest within 14 days from the same day (i.e. February 19, 2019), and the parties shall firstly carry out negotiations for issues related to the arbitration fees and interest on a without prejudice basis and try to reach settlements.

(2)    If the parties fail to reach settlements on all the issues related to the arbitration fees and interest by March 5, 2019, the parties shall, within 21 days thereafter (i.e. March 26, 2019), submit their respective statements for the issues related to the arbitration fees and interest that have not been settled to the arbitral tribunal. The statements shall include the liabilities of the parties on the issues related to the arbitration fees and interest, the amount claimed, and the evidentiary materials and legal basis for the statements of the parties.

(3)    There is no need to provide information other than each bill amount in the bill of attorney's fees and those protected by privilege in other evidentiary materials.

(4)    Each party shall submit its own response to the other party's statements within 14 days (i.e. April 9, 2019) after submitting the statements for the issues related to the arbitration fees and interest.

8.    On March 24, 2019, the arbitration tribunal, at the joint request of the parties, approved the extension of the statements for the issues related to the arbitration fees and interest submitted by the parties to April 4, 2019, and the extension of the time for the parties to submit their responses to April 18, 2019 accordingly.

3

9.      On April 4, 2019, the arbitration tribunal, at the joint request of the parties, approved the Respondents to apply for a short-term extension for the parties to submit their statements for the arbitration fees and interest to April 8, 2019, and the time for the parties to submit their responses to April 23, 2019 accordingly (taking into account that April 22 is the Easter holiday).

10.     On April 8, 2019, the first Claimant submitted the claimed amount for the arbitration fees of the first Claimant and the statements for the arbitration fees and interest of the first Claimant. On the same day, the second Claimant submitted the statements for the fees and interest and the regulations of legal basis. In the early morning on April 9, 2019, the Respondents submitted the statements for the issues related to the arbitration fees and interest of the Respondents.

11.     On April 24, 2019, at the joint request of the parties, the arbitration tribunal approved the extension for two weeks, and the parties submitted the responses to the arbitration fees and interest on May 7, 2019.

12.     On May 8, 2019, after hearing the objections of the second Claimant and the Respondents against the application for extension made by the first Claimant on May 7, the arbitration tribunal approved the parties to submit the responses to the arbitration fees and interest on May 10, 2019. The arbitral tribunal emphasized that it would not approve any application for extension again unless there were some very special reasons.

13.     On May 10, 2019, the parties submitted their statements for their responses to the arbitration fees and interest.

14.     The arbitration tribunal has carefully and fully read and considered the written statements submitted by the parties, and made the *Final Award on Arbitration fees and interest* after collegial discussions. As the statements submitted by the parties were quite detailed and lengthy, the arbitral tribunal does not list all the views and claims of the parties in this award, but this does not mean that the arbitral tribunal has not fully considered those views or claims.

ASIA-DOCS\10768653.6

**B. <u>Statements of the first Claimant</u>**

15. The first Claimant relied on the *Statements for Arbitration fees and interest* submitted on April 21, 2018. In the statements, the first Claimant indicated that, two points were indicated by the Respondents in the statements for the arbitration fees in Part F in the closing statements on July 13, 2017:

(1)      The arbitration fees shall be apportioned proportionally depending on the liabilities in the result of the award;

(2)      If the Respondents are required to pay the arbitration fees, the arbitration fees of the second Claimant shall not be paid.

16. The first Claimant claims that the arbitration fees (including the attorney's fees of the first Claimant) shall be borne by the Respondents for the following reasons:

(1)      Unless under special circumstances, the arbitration fees shall be borne by the unsuccessful party in principle: Article 36.4 in the Hong Kong International Arbitration Centre Administered Arbitration Rules (effective from September 1, 2008);

(2)      Under the arbitration award, the arbitral tribunal obviously accepted the positions of the first Claimant with respect to most of the disputes and ruled that the Respondents lost in the case. The first Claimant listed the paragraphs and decisions in the final award: Paragraphs 246, 254, 267, 268, 269, 271, 274, 281 (on equity considerations); 274 (on property swap); 314, 318, 320, 322, 324 (on settlement of the bonds and debts of Si Ji Hua Cheng).

17.      The first Claimant also indicates that, the Respondents have expressly indicated that the Respondents are willing to pay the arbitration fees of the first Claimant if required to pay the arbitration fees for the arbitration: See Paragraph 161 of the Respondents' closing statement.

18.      The total amount of the first Claimant's claim for the arbitration fees is HK$ 28,000,000, including the first Claimant's expenses on lawyer, barrister and arbitration center and arbitration tribunal. However, the arbitral tribunal noted that the first Claimant did not provide evidentiary support for the amount, which was not in line with the directions made by the arbitral tribunal on February 19, 2019, and also made it impossible for the arbitral tribunal to know whether the amount was accurate.

19.     With respect to the interest, the first Claimant claims that the Respondents shall pay interest for the period from December 31, 2012 to the actual payment date for the delayed payment of the final installment of the consideration of RMB 150 million.

20.     The first Claimant suggested that the arbitral tribunal should adopt an appropriate interest rate of 8% for the ruled debts as shown by the Hong Kong court. Alternatively, if the arbitral tribunal considers that the interest rate for the ruled debt is applicable to the period after the award is issued, the first Claimant proposes to adopt the appropriate interest rate from December 31, 2012 to the effective date of the award, which is the most preferential interest rate of HSBC's Hong Kong dollar plus 1%: See Hong Kong Civil Procedure 2018 Vol. 1, Pages 99-105.

21.     Finally, the first Claimant requested the arbitral tribunal to clarify the effective date of the award, because the date of the award was February 28, 2018, but the parties did not receive the documents until March 7, 2018.

**C. Statements of the second Claimant**

22.     The second Claimant indicated that the arbitration tribunal decided on April 6, 2016 to allow the counsel of the second Claimant at that time (Baker McKenzie) to participate in the arbitration on behalf of the second Claimant for the administration of the estate. Based on the fact that the second Claimant, as the successful party of the arbitration, won for all the disputes and provided intellectual cooperation and assistance to the work of the arbitration tribunal in the whole arbitration process, the second Claimant claims that the arbitration tribunal shall rule that the second Claimant shall be awarded the fees incurred in the arbitration.

23.     The second Claimant has prepared a list of summary of the arbitral tribunal in the final award and the correction award, and intends to prove that the second Claimant is the successful party.

24.     In addition, the second Claimant indicated that the arbitration tribunal accepted the second Claimant's claims, ruled that the Respondents should compensate the Claimants for the loss of RMB 10,346,211 (Paragraph 303 and Order No.9 in the final award), and rejected all the counterclaims of the Respondents in Paragraph 222 in the final award. Therefore, the second Claimant claims that the Respondents shall bear the fees incurred by the second Claimant for arbitration.

25.     The second Claimant cited and relied on Section 74 in the Hong Kong Arbitration Ordinance (Chapter 609 of the Laws of Hong Kong) which provides for the right of the arbitral tribunal to make an award on arbitration fees, and the provisions in Article 36 in the *2008 Hong Kong International Arbitration Centre Administered Arbitration Rules.*

26.     Section 74 in the Hong Kong Arbitration Ordinance (Chapter 609 of the Laws of Hong Kong) provides for the right of the arbitral tribunal to award the arbitration fees:

*"74. Arbitral tribunal may award costs of arbitral proceedings*

*(1) An arbitral tribunal may include in an award directions with respect to the costs of arbitral proceedings (including the fees and fees of the tribunal).*

*(2) The arbitral tribunal may, having regard to all relevant circumstances (including the fact, if appropriate, that a written offer of settlement of the dispute concerned has been made), direct in the award under subsection (1) to whom and by whom and in what manner the costs are to be paid.*

7

*(3) The arbitral tribunal may also, in its discretion, order costs (including the fees and fees of the tribunal) to be paid by a party in respect of a request made by any of the parties for an order or direction (including an interim measure).*

*(4) The arbitral tribunal may direct that the costs ordered under subsection (1) are to be paid forthwith or at the time that the tribunal may otherwise specify.*

*(5) Subject to Section 75, the arbitral tribunal must –*

*(a) assess the amount of costs to be awarded or ordered to be paid under this section (other than the fees and fees of the tribunal); and*

*(b) award or order those costs (including the fees and fees of the tribunal).*

*(6) Subject to subsection (7), the arbitral tribunal is not obliged to follow the scales and practices adopted by the court on taxation when assessing the amount of costs (other than the fees and fees of the tribunal) under subsection (5).*

*(7) The Arbitral tribunal –*

*(a) must only allow costs that are reasonable having regard to all the circumstances; and*

*(b) unless otherwise agreed by the parties, may allow costs incurred in the preparation of the arbitral proceedings prior to the commencement of the arbitration.*

8

*(8)      A provision of an arbitration agreement to the effect that the parties, or any of the parties, must pay their own costs in respect of arbitral proceedings arising under the agreement is void.*

*(9)      A provision referred to in subsection (8) is not void if it is part of an agreement to submit to arbitration a dispute that had arisen before the agreement was made."*

27. In addition, Article 36 in the 2008 Hong Kong International Arbitration Centre Administered Arbitration Rules (the "2008 Arbitration Rules") provides as follows:

*"36.4 Except as provided in Article 36.5, the costs of arbitration shall in principle be borne by the unsuccessful party. However, the arbitral tribunal may apportion all or part of such costs between the parties if it determines that apportionment is reasonable, taking into account the circumstances of the case.*

*36.5 With respect to the costs of legal representation and assistance referred to in Article 36.1(5), the arbitral tribunal, taking into account the circumstances of the case, shall be free to determine which party shall bear such costs or may apportion such costs between the parties if it determines that apportionment is reasonable."*

28. In addition, the second Claimant also cited the following documents and cases:

(1) Arbitration in Hong Kong, A Practical Guide, Fourth Edition 2017, § 15.223-15.226;

(2) **Re Eligndata Ltd No.2** [1992] 1 WLR 1207;

(3) **Kwan Siu Wa Becky v. Cathay Pacific Airways Ltd** (CACV 92/2010, 19/04/2011)

9

29. Based on the above legal arguments, the second Claimant claims that the successful party should not be deprived of its costs generally unless the unsuccessful party can prove that the issues or accusations raised by the successful party lead to significant extension of the arbitration procedures or significant increase of the arbitration fees.

30. The second Claimant itemized the legal fees incurred in the arbitration as follows:

| Serial No. | Content | Estimation of Amount (HK$) |
|---|---|---|
| 1. | Prepare and review the documents to defend in the arbitration (including but not limited to the Notice of Arbitration, reply to the Notice of Arbitration, Application for Arbitration, Statement of Defense, counterclaim, etc.) | Half of the fees claimed by the first Claimant |
| 2. | Prepare and respond to the witness testimony | 1,920,000.00 |
| 3. | Assist in the preparation of expert reports | 915,000.00 |
| 4. | Prepare trial files | 620,000.00 |
| 5. | Prepare opening statement, relationships and events | 450,000.00 |
| 6. | Attend the session | 1,800,000.00 |

ASIA-DOCS\10768653.6

| 7. | Prepare the closing statement for two rounds | 510,000.00 |
| 8. | Participate in the closing session | 200,000.00 |
| 9. | Provide general legal advice for arbitration, and contact the arbitration tribunal, barrister, parties and third parties | 1,938,367.23 |
| | Total | 8,353,367.23 |

The main third party expenses and miscellaneous expenses incurred by the second Claimant in the arbitration are shown as follows (see [Attachment-2] for the relevant bills):

| No. | Content | Amount (HK$) |
|---|---|---|
| 1. | Barrister fees<br><br>Fees for senior Barrister Xu Weiqiang    810,000 to participate in pretrial meeting and fees for engagement to attend the session<br><br>Fees for Barrister Zheng Xinqi to    282,000 participate in pretrial meeting and fees for engagement to attend the session | 2,084,000.00 |

11

| | | |
|---|---|---|
| | Fees for Senior Barrister Xu Weiqiang 324,000 to prepare the closing statements in two rounds<br><br>Fees for Barrister Zheng Xinqi to 108,000 prepare the closing statements in two rounds<br><br>Fees for renewal of engagement of 270,000 Senior Barrier Xu Weiqiang<br><br>Fees for renewal of engagement of 90,000 Barrier Zheng Xinqi<br><br>Fees for Senior Barrister Xu Weiqiang 140,000 to prepare an application for corrections of the award<br><br>Fees for Barrister Zheng Xinqi to 60,000 prepare an application for corrections of the award | |
| 2. | Expert fees for Ye Yongqing | 396,953.00 |
| 3. | Fees for the arbitration tribunal | 2,136,542.52 |
| 4. | Fees for Hong Kong International Arbitration Centre | 41,120.50 |

ASIA-DOCS\10768653.6

| 5. | DTI costs | 75,475.00 |
|----|-----------|-----------|
| 6. | Fees for session room | 89,898 |
| 7. | Total | 4,823,989.02 |

Total amount: HK$ 13,177,356.20

31. As for the claim of the Respondents in Paragraph 161 of their closing statement, namely, even if the Respondents are required to pay the costs for this arbitration, they only need to pay the costs of the first Claimant. The second Claimant cited the reference given by the Hong Kong Court in Eric Edward Hotung v. Ho Yuen ki (HCA 857/2011, 18/05/2017). In this case, when the court decided the necessity of the second and third defendants to be represented respectively by different teams of attorneys, it cited the representation of the court in **Xiamen XinJingDi Group Co., Ltd. formerly known as** v. Eton properties Ltd & ors (HCCL 13/2011, 20/11/2012), and put forward the following analysis:

*"29 Accordingly if, as Mr Barlow strongly pressed, 'necessity' indeed is the appropriate benchmark when considering the separate representation of multiple defendants, then it seems to me that this must be qualified in terms of the 'necessity' of such separate representation being **reasonably apparently when viewed through the factual prism existing at the time of the retention of such representation, and not simply as a post-facto conclusion based upon that which did, or did not, occur at trial.***

13

*30 In the present case thereof, at the time of retention of the representation in question - and as we know in this case eventually there were four 'clusters of defendants and four legal teams - was it reasonable or unreasonable to have taken the view that separate representation was 'necessary" in order to guard against the possibility of conflicts of interest arising between the multiple defendants?"*

*5. It would appear that the learned judge considered the applicable test to be whether it was reasonably necessary for two (or more) legal teams to be engaged for a number of defendants **<u>when viewed at the time of retention of such representation, and not as a matter of hindsight.</u>"***

32. Therefore, in order to determine whether the joint plaintiffs have the reasonable and obvious necessity to engage different attorneys, it must be based on the facts at the time of engaging the attorneys.

33. The second Claimant stated why the original acting attorneys of the second Claimant, Zhou Zhuoli, Chen Qiqiu and Chen Yili, could not continue to represent the administrator of Mr. Ke Zhengguang's estate after the death of the second Claimant, Mr. Ke, on or about December 15, 2013, and why the arbitral tribunal decided on April 6, 2016 to allow Baker McKenzie Law Firm to represent the administrator of Mr. Ke's estate to participate in the arbitration.

34. The second Claimant also stated that the team of attorneys did their best to assist and cooperate with the work of the arbitral tribunal.

14

35. In addition to the main procedures and documents in the general arbitration process, the second Claimant also claimed in Paragraphs 36-58 of the statement that the second Claimant has the right to recover the fees from the Respondents or the first Claimant for the ten intermediate procedures of the arbitration. The relevant statements have been considered in detail by the arbitration tribunal and it is unnecessary to reiterate them here.

36. With respect to the interest, the second Claimant's statement is divided into two parts:

(1) Interest before the issuance of the final award; and

(2) Interest after the issuance of the final award.

37.    With respect to Part (1) (i.e., the interest before issuance of the final award), the second Claimant cited the relevant provisions of Section 79 of the Hong Kong Arbitration Ordinance on the right of the arbitral tribunal to make an award on the interest.

38.    As for the applicable principal for the interest, the second Claimant claims that the Respondents shall pay the sum awarded to the second Claimant under the final award, which is the interest generated by one half of the amounts in Order No.8 (RMB 150 million minus RMB 41,244,613.21 plus RMB 30 million) and Order No.9 (RMB 10,346,211) respectively.

39.    As for the period of interest, the second Claimant claims that it shall be the period from the expiration of the performance period under the *4.28 Agreement* to the date when the arbitral tribunal makes an award. For Order No.8 of the final award, according to Article 2.2.1 (3) of the *4.28 Agreement*, the calculation shall start from December 31, 2012 and end on February 28, 2018 which is the date of the final award. For Order No.9 of the final award, the calculation shall start from August 8, 2017 and end on February 28, 2018 which is the date of the final award.

40.    With respect to the interest rate, the second Claimant claims that the traditional interest rate of Hong Kong Court shall apply, that is, the annual interest rate shall be the most preferential loan interest rate of HSBC, which is often applicable, plus 1%. The second Claimant cited the cases of Hong Kong Court - **Komala Deccof & Co. S.A. and Others v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara (Pertamina)** [1984] HKLR 219 and **Waddington Ltd. v. Chan Chun Hoo Thomas** CACV 10/2014, 20.2.2016).

15

41.     The second Claimant also claims that the interest of Order No.8 of the final award shall be calculated at the compound interest rate, so as to actually reflect the loss of the Claimants being deprived of the relevant funds as a result of the Respondents' breach, and the legal basis is **A-G v. Shimizu Corp** [1996] HKLY 88.

42.     With respect to Part (2) (i.e., the interest after issuance of the final award), the second Claimant cited the provisions of Article 80 of the Hong Kong Arbitration Ordinance on the right of the arbitral tribunal to make an award on interest.

43.     The second Claimant claims that the Respondents shall pay to the second Claimant the interest under Orders No.8 and No.9 of the final award at the interest rate of 8%. The time of interest calculation shall start from the payment deadline stipulated in the final award; that is, for Order No.8, it shall start from the date of reaching 3 months from the date of making the award and end when the appropriate amount is paid. For Order No.9, it shall start from the date of making the award until the appropriate amount is paid.

**D. Statements of the Respondents**

44. In the summary of the Respondents' statements, it is indicated that:

*"In the Respondents' opinion, the arbitral tribunal has full discretion with respect to the apportionment of fees and interest. In this case, the parties have their claims that are supported. The position of the Respondents in the procedure of this case is reasonable. Respondents's position had always been that Respondents agree to fulfill the 4.28 Agreement. The Respondents have never objected the implementation of the agreement, but the implementation of the agreement requires the cooperation of all the parties. The current implementation situation just proves the view the Respondents have been holding. The implementation by "division" cannot move forward because of failure in cooperation arising from different opinions of the parties. The biggest dispute among the parties in this case is the apportionment of the liabilities of taxes in China arising from the transfer of 80% of equities of Si Ji Hua Cheng when performing the "division" in the agreement, and in this regard, the position of the Respondents is supported by the arbitral tribunal.*

16

*After considering the comprehensive situations of this case, the Respondents claim that, in this case, except for the costs that the arbitral tribunal has already decided to be borne by one party (for example, the costs incurred when the first Claimant requested to revise the pleadings in 2016 shall be borne by the first Claimant), the arbitration tribunal shall decide that the parties shall bear their own arbitration fees.*

*To make a concession, alternatively, if the arbitration tribunal deems it necessary to make other decisions on the arbitration fees, then the Respondents claim that, in this case, the time and costs of the proceedings are significantly increased due to the conflicts between the Claimants and other reasons, and the Respondents shall not bear the following expenses: (1) The expenses that have been decided by the arbitration tribunal to be borne by the first Claimant; (2) The expenses related to the Claimants' multiple counsels; (3) The expenses incurred in handling with the conflicts between the Claimants; and (4) The expenses incurred for the Respondents to gain support (including the Claimants' objection and question to the substitute arbitrator, the Claimants' interpretation, correction and supplementation, etc.). These expenses shall be borne by the Claimants. Please refer to Attachment I (Summary of Attorney's fees for the Related Matters of the Respondents).*

*With regards to interest, the Respondents consider that they are not required to pay the interest. To make a concession, alternatively, if, in the opinion of the arbitration tribunal, the Respondents are required to pay interest for the third installment of the payment, the principal of the interest shall be calculated in accordance with the amount in Paragraph 57 herein, and the interest period and interest rate shall be adjusted and calculated in accordance with Paragraphs 59-65."*

45.     The Respondents cited Subsection 36.1 of the Arbitration Rules, Article 74 (2) of the Hong Kong Administered Arbitration Ordinance (Chapter 609 of the Laws of Hong Kong), Articles 36.4 and 36.5 of the Arbitration Rules and believed that the principle of "costs follows the event" was not the only way for the arbitration tribunal to apportion the arbitration costs. The other guiding principles include the one that the arbitral tribunal exercises its discretion to determine the apportionment of the expenses if it "decides what kind of expenses is reasonable after considering the circumstances of the case".

46.     The Respondents also cited two British cases: **In re Elgindata Ltd (No. 2)** [1992] 1 WLR 1207 and **AEI Rediffusion Music Ltd v. Phonographic Performance Ltd** [1999] 1 WLR 1507, PP. 1523-1524.

47.     In the opinion of the Respondents, for example, in the analysis of the case for **AEI Rediffusion Music Ltd v Phonographic Performance Ltd**, the arbitral tribunal should not overemphasize that a party was the ultimate successful party in determining the apportionment of expenses, without distinguishing between good and bad opinions, or considering whether they would cause excessive expenses. On the contrary, the arbitral tribunal should consider the reasonableness of the costs as a whole. If a party causes unreasonable time and expenses, resulting in significant increase of the length or costs of the proceedings, it may be deprived of all or part of the expenses, and it shall pay all or part of the expenses of other parties.

48.     The Respondents indicated that its position in the procedures of this case was reasonable. The Respondents' position have always that the respondents are willing to perform the *4.28 Agreement*, and agreed to request all the parties to push forward all matters in accordance with the provisions of the *4.28 Agreement*. However, the parties had different understandings of the provisions of the *4.28 Agreement* (mainly some steps and understanding of the liabilities of the parties for "division"), which requires the instructions of the arbitration tribunal. In this case, although the arbitration tribunal ruled that the Respondent had breaches, the final order was to request the parties to move forward with all matters in accordance with the provisions of the *4.28 Agreement*, which was essentially consistent with the Respondents' claim. A detailed analysis was made from the four disputes concerning the perspective of equity consideration, cash consideration, debt settlement and property swap:

18

(1)      With regards to equity consideration, this can be reflected in the following three points. Firstly, the biggest dispute in this case is the apportionment of the liabilities for taxes in China arising from transfer of 80% of the equities in Si Ji Hua Cheng. It is the disagreement on this point that leads to the delay of the whole "division" procedure of the parties, which is also the cause for the disputes among the parties. With regards to this, the Respondents' position is supported by the arbitration tribunal: Paragraphs 232 and 233 of the Final Award indicate that, in accordance with the provisions of Article 2.2.1 (4) (a) of the *4.28 Agreement*, if a price must be defined for the equity transfer of Si Ji Hua Cheng, the relevant taxes shall also be borne by the Claimants and shall be deducted from the cash consideration to be paid by the Respondents. Furthermore, the arbitration tribunal also supported the position of the Respondents in the *Interpretation, Correction and Supplementation for the Arbitration Award*, i.e., it is agreed that Paragraphs 232 and 233 of the *Final Award* had made a clear representation on this issue, so there was no need to make correction or supplementation. Secondly, although the arbitration tribunal deems that the Respondents are in breach when determining the liabilities for the equity transfer, the order given by the arbitration tribunal is not in conflict with the Respondents' claim. The arbitration tribunal requests the parties to move forward the transfer as agreed in the agreement, which is also the result the Respondents hoped to see (especially considering the legal and tax risks that may exist in the many years of operation of the other party). Thirdly, the implementation of Order No.5 of the *Final Award* shows that the cooperation among the parties is indeed required in order to complete the equity transfer. The lack of cooperation from the Claimants made it difficult for the equity transfer to move forward. This proves the view put forward by the Respondents in the arbitration process: The precondition for the performance of equity consideration is that the Claimants must cooperate, but the Claimants are not willing to cooperate with the Respondents to implement the relevant matters. Therefore, the Claimants and the Respondents shall bear their own arbitration costs related to the equity transfer.

19

(2)      With respect to the cash consideration, Order No.8 of the *Final Award* of the arbitration tribunal expressly indicates that the parties shall make adjustments (including tax deduction) and then payment in accordance with Article 2.2.1 (4) (a) of the *4.28 Agreement* and Paragraphs 232 (4) and 233 of the *Final Award* after completing the equity transfer, property swap, debt settlement and other matters. The position of the Respondents has always been that the Respondents agree to pay the adjusted third installment of the payment in the condition that all the preconditions for the third installment of the payment are met. It shows that the position of the Respondents is reasonable, and the steps for the parties to make final implementation of the cash consideration are as requested by the Respondents, that the preconditions must be met and the adjustments shall be made.

(3)      With respect to the debt settlement, not all claims of the Claimants received approval from the arbitration tribunal. With regards to the six disputes, the arbitration tribunal supported the claims of the Respondents for two disputes (for example, the salary expenses from January to November 2009 for Ke Zhengguang and Xu Hongbiao should be returned to the first Respondent; the Respondents do not need to pay any interest for the use of Sij Ji Hua Cheng fund by Oasis Investment and its subordinate companies as well as the current accounts that were not paid to the Claimants), and the arbitration tribunal held that two disputes were beyond its jurisdiction and did not handle them.

(4)      With respect to the property swap, the Respondents do not object the property swap, but only considers that the villa does not comply with the agreement. Although the arbitral tribunal ruled that the villa was in conformity with the agreement, it ruled in Orders No.1 and No.2 of the *Final Award* that the relevant documents of Jiuting Shop and the villa were signed at the same time, which was consistent with the requests of the Respondents. The amount of rent loss (RMB 10,346,211) that the arbitration tribunal requests the Respondents to pay has also been reduced compared to the amount claimed by the Claimants in Attachment I of the *Closing Statements of the Second Claimant* on July 11, 2017.

ASIA-DOCS\10768653.6

49. In contrast, many of the positions and costs of the two Claimants in this case are unreasonable. The specific analysis is as follows:

(1)      Although the two Claimants took the same position in the end, disputes arose between the two Claimants since 2015. The second Claimant engaged a lawyer and a barrister separately and actively participated in the trial of the case, and the parties spent a lot of time and work to deal with the disputes between the two Claimants. In fact, this changed the arbitration case for disputes between two parties to disputes among three parties.

(2)      In addition, the Claimants have taken unreasonable positions in this case in many occasions. For example, the Claimants insisted that the arbitration tribunal take the place of the court to appoint Ms. Zhang as the representative of Mr. Ke's estate, and the first Claimant put forward the request to "remove the second Claimant and make the estate the fifth Respondent", but was objected by the second Claimant, and still made challenges after the Hong Kong High Court appointed the personal representative of the estate of the second Claimant, and so on. These positions did not have legal basis and were not supported by the arbitration tribunal. They also wasted a lot of time and work of the parties and the arbitration tribunal.

(3)      To sum up, in this case, the "reasonable" result is that the parties shall bear their own arbitration costs respectively.

50. In addition, the Respondents also propose an alternative claim, that is, if the arbitral tribunal deems that other decisions should be made regarding the arbitration fees, then in this case, due to the significant increase of the time and costs of the procedures arising from the disputes between the Claimants and other reasons, the Respondents shall not bear the following expenses:

21

ASIA-DOCS\10768653.6

(1) The expenses decided by the arbitration tribunal to be borne by one party or to be retained for apportionment;

(2) Unreasonable and unnecessary expenses incurred by the two Claimants for using multiple counsels;

(3) Expenses incurred due to conflicts between the Claimants;

(4) The relevant expenses incurred in the outcome of the award that the Respondents won or expected to be consistent with the Respondents' request in the case.

51.     In view of the above four major items, the Respondents provided the expenses for handling each item, and also requested the arbitral tribunal to determine the amount of relevant expenses of the arbitral tribunal.

52.     As for the issue regarding interest, the Respondents indicated that the parties did not reach any agreement on the interest in the *4.28 Agreement* or the reorganization agreement.

53.     Under such circumstances, under the Article 79.1 of the Hong Kong Arbitration Ordinance, the arbitral tribunal has full discretion on the issues regarding the interest. The Respondents also cited the *High Court Ordinance* of Hong Kong (Chapter 4 of the Laws of Hong Kong), claiming that this principle also applies in Hong Kong civil cases. The Respondents also cited two British cases: **Business Computers Ltd v. Anglo-African Leasing Ltd** [1977] 1 WLR 578 and **Claymore Services Limited v. Nautilus Properties Limited** [2007] EWHC 805 (TCC).

54.     The Respondents holds that the arbitration tribunal shall rule that the Respondents are not required to pay interest to the Claimants for the following reasons:

(1)     In the consideration in the "division", apart from the payment for the third installment of the cash consideration, the Claimants have obtained economic benefits from the other considerations.

ASIA-DOCS\10768653.6

(2)      The *4.28 Agreement* stipulates that preconditions have been established for the third installment payment. The parties have no dispute that such preconditions are not yet mature. Order No.8 of the *Final Award* of the arbitration tribunal also indicates that the payment shall be made after the equity transfer, property swap, debt settlement and other matters have been completed by the parties and adjustments (including tax deduction) are made in accordance with Article 2.2.1 (4) (a) of the *4.28 Agreement* and Paragraphs 232 (4) and 233 of the *Final Award*.

55.      On May 4, 2010 and June 27, 2011, the Respondents paid RMB 100 million out of the RMB 250 million in the cash consideration;

56.      Although the ownership of Si Ji Hua Cheng and Jiuting shops has not been formally transferred, the Claimants have already been enjoying the economic benefits therefrom. Moreover, before signing the *4.28 Agreement*, the control of Si Ji Hua Cheng had been fully handed over to the Claimants, and the shops had been handed over to the Claimants for management through the power of attorney. All the profits from the development and sale of Ban Dao Jun Wang Villas under Si Ji Huang Cheng belong to the Claimants. According to the court statements of Miss Ke, the personal representative of the estate of the second Claimant, 29 units of the villas had been sold at that time, and Si Ji Hua Cheng/the Claimants obtained at least RMB 1 billion of total sales amount. Moreover, the arbitral tribunal has determined the amount of the loss of the shop rent paid by the Respondents to the Claimants.

57.      On the contrary, the Respondents have not yet acquired the ownership of the villas or moved into the villas, and have no way to use the villas or realize their economic value. However, the Claimants, in fact, are controlling some Jiuting shops and gain benefits therefrom. Obviously, this is not consistent with the original intention of the swap of the parties and is unfair to the Respondents. In addition, the total market value of the two villas was about RMB 94.17 million (the time of valuation was September 30, 2016). During the trial, Miss Ke Yeying stated that the value of the shops exceeded RMB 100. Mr. Xu Hongbiao also said that the value of the villas was much lower than that of the shops when inquired.

ASIA-DOCS\10768653.6

58.     The arbitration procedures were delayed due to the contradictions and conflicts between the two Claimants and other reasons. The liabilities did not lie with the Respondents, so the Respondents should not be punished for this.

59.     To make a concession, alternatively, if the arbitration tribunal considers that the Respondents should pay interest for the third installment of the payment, the Respondents consider that the principal amount for the interest to be paid should be RMB 22,289,896, and the following corresponding adjustments shall be made for the interest period, and the interest rate for the second installment shall be calculated on the basis of the Hong Kong Association of Banks Hong Kong Dollars Interest Settlement Rates (HKAB HKD Interest Settlement Rates) (also known as the "Hong Kong InterBank Offered Rate "HIBOR") + 2%.

60.     With regards to the calculation of principal for the interest, first of all, the Respondents consider that the total principal for the interest to be paid to the Claimants should be RMB 22,289,896 (i.e., RMB 150 million - RMB 41.224613 million - RMB 3.127591 million - RMB 42.0664 million - RMB 26.2915 million - RMB 15 million). The reasons are as follows:

(1)     According to Article 2.1 of the *4.28 Agreement*, the final settlement amount shall be RMB 150 million less the carryover current accounts undertaken by the Claimants which was more than RMB 41 million. In view of the fact that the parties have no dispute about such amount and the arbitral tribunal supports this view, RMB 41.224613 million shall be deducted from the final settlement.

(2)     RMB 3,127,591.77 was the salary expenses for Ke Zhengguang and Xu Hongbiao from January to November 2009. The arbitration tribunal supported the position of the Respondents and ruled that Si Ji Hua Cheng (the Claimants) shall pay the first Respondent such amount. Therefore, this amount should be deducted from the principal.

(3)     According to the net assets reflected in the accounting reports of Si Ji Hua Cheng in 2009 and the possible profits generated by the villa project, the income tax payable from transfer of 80% equities of Si Ji Hua Cheng held by Greencourt Property is about RMB 42.0664 million (experts in the parties agree that, according to the *Law on Enterprise Income Tax* and its implementation regulations, the enterprise income tax is calculated at the special tax rate applicable to non-resident enterprise, i.e., 10% of the income from equity transfer); the income tax payable from the transfer of 20% equities of Si Ji Hua Cheng held by Greencourt Science and Technology Innovation is about RMB 26.2915 million (for the transfer for residential enterprises, the tax rate of 25% is based on for calculation).

24

(4)      On January 29, 2016, the Respondents paid RMB 15 million to Sheng Yuan through the related party on behalf of Si Ji Hua Cheng. Both the Respondents and the second Claimant agree that such RMB 15 million "shall be deemed that the first Respondent has paid the current account of RMB 15 million in advance on behalf of Si Ji Hua Cheng according to the provisions in the *Agreement on Advance Payment of Current Accounts*", which can be used to offset the current accounts. For this matter, although the arbitration tribunal holds the opinion that the issue of "whether the amount can be used to offset RMB 41.224613 million for the current accounts" falls beyond the jurisdiction of the arbitration tribunal, it does not deny that the amount had been paid. Therefore, the amount should be deducted from the principal for interest in calculation.

(5)      Article 2.1.2 of the *4.28 Agreement* expressly indicates that RMB 30 million is the "conditional payment" for "one-off additional compensation", and the payment condition is that "the payment of the consideration for the share repurchase by Oasis Investment has been completed and there is no major dispute between the two parties". However, the parties have major disputes on the consideration payment during the performance of the *4.28 Agreement* and the consideration payment for share repurchase has not been completed, so the additional compensation of RMB 30 million shall not be included in the scope of calculation for interest.

61. With regards to the applicable period of interest calculation and the applicable interest rate, the Respondents consider that appropriate adjustments should be made for the following reasons:

25

(1)      It shall start from January 1, 2013 and end on March 7, 2018, lasting about 62 months. During which, the period of suspension of arbitration proceedings not caused by the Respondents shall be deducted.

(2)      Unfortunately, Mr. Ke, the second Claimant, died in December 2013. From January 2014 to April 2015, the procedures were suspended while waiting for the appointment of the personal representative of the estate by the Hong Kong High Court. However, during the period between April and August 2015 and the period between January and July 2016, conflicts arose between the two Claimants. The first Claimant tried to remove the second Claimant, and questioned the qualifications of the estate administrator of the second Claimant, resulting in the delay of the procedures. Such delay was not caused by the Respondents, so the Respondents consider that the period (26 months in total) should not be included in the period for interest calculation. Therefore, the total period for interest calculation should be 36 months (i.e., 62 months minus 26 months).

62. With regards to the interest rate, based on the analysis in Paragraphs 51-56 above, the arbitral tribunal shall also exercise its discretion to determine the reasonable interest rate. The Respondents claim that the reasonable interest rate in this case is the Hong Kong Association of Banks Hong Kong Dollars Interest Settlement Rates (HKAB HKD Interest Settlement Rates) (also known as the "Hong Kong InterBank Offered Rate (HIBOR)") + 2% in the corresponding period. There were also precedents in the cases in Hong Kong:

(1)      In the case of Waddington Ltd v. Chan Chun Hoo Thomas & ORS (No 2), the court held the opinion that the interest rate in Hong Kong had been stable at a low level in the past ten years or for a longer time, so the traditional interest rate (the most preferential interest rate + 1%) was not used to calculate the pre-judgment interest rate. In the end, the court used a 2.5% interest rate in the case to calculate the interest.

(2)      Furthermore, in the case of Tadjudin Sunny v. Bank of America, NA (No. 2), when determining the interest rate that should be applied before judgment, the court indicated, "for many years, Hong Kong has been in an environment of continuous low interest rate, with sufficient fund supply. Both the savings rate and the fixed deposit rate are extremely low. In such environment, the most preferential interest rate seems not to be favored. The Hong Kong Interbank Offered Rate (especially for 12-month period) seems to better reflect the situations of the money market and serve as a more realistic index to assess the cost of money. It is used as the base rate for a large number of borrowings. Many mortgage loans and commercial loans bear interest at the Hong Kong Interbank Offered Rate plus a cap indicating whether an addition or subtraction is made based on the most preferential interest rate. This fixed percentage is determined as a result of negotiations, depending on the bargaining power of the borrower, the scale of the loan and the state of the money market. "In view of this consideration, the court finally adopted the interest rate of 2.85% (i.e., 0.85% of the Hong Kong Interbank Offered Rate plus 2% for 12-month period) to calculate the interest.

63. The Respondents consider that the Respondents shall not bear the interest incurred from the time the award was issued until now. The reasons are as follows:

(1) In the implementation stage of the arbitration award, either because the two Claimants put forward contradictory directions many times, or Si Ji Hua Cheng, which was under the actual control of the two Claimants, refused to cooperate and provide the relevant necessary documents or cooperate (for example, the Claimants have yet to fulfill Order No.4 and provide the audit report of Si Ji Hua Cheng so far), so the Respondents cannot actually move forward the implementation of the *Final Award*. Therefore, the interest of this period shall not be borne by the Respondents.

64. The contradictory directions of the two Claimants made after the award is shown in the summary of the Respondents' letter to the arbitral tribunal on October 29, 2018. The current performance of each order sorted out by the Respondents is as follows:

(1)     Order No.1 of the *Final Award*: (1) The second Claimant appointed Shanghai Qingxuan Enterprise Management Consulting Co., Ltd. on September 11, 2018 to accept 50% of the equities of Jiuting shops, which also differs from the provisions of Order No.1 of the *Final Award*. In this respect, the first Claimant did not indicate whether he agreed with or objected to it. (2) On September 19, 2018, the first Claimant changed the transferee of Jiuting shops (i.e., Shanghai Suquan Culture Development Co., Ltd.) previously designated by the first Claimant to Xu Hongbiao, i.e., the first Claimant, on the ground that the ownership of the shops cannot be jointly owned by two or more legal person companies in specific operations. In this respect, the second Claimant did not indicate whether it agreed with or objected to it. However, so far, the Respondents have not received the confirmation from the transferee of Jiuting shops jointly designated by the two Claimants, or from the two Claimants on how to divide the shops. Under such circumstances, the Respondents are unable to carry out the transfer of Jiuting shops.

(2)     With regards to Order No.2 of the *Final Award*, the arbitral tribunal makes corrections in accordance with the consensus reached by the parties. At present, the Claimants have not transferred the villas to the Respondents.

(3)     With regards to Order No.3 of the *Final Award*, the first Claimant wrote to the Respondents on May 25, 2018, claiming, "*the personal financial seal of Si Ji Hua Cheng of the first Claimant has been illegally cancelled which made the first Claimant unable monitor the financial situations of Si Ji Hua Cheng, so the first Claimant solemnly requests that **the Respondents can only make the payment determined in Order No.3 into the jointly monitored account of Si Ji Hua Cheng after the Claimants jointly provide the Respondents with a bank account of Si Ji Hua Cheng under the joint supervision of the first Claimant and the second Claimant**...If the Respondents make payment to the account provided by the second Claimant without the consent of the first Claimant, the first Claimant states that the first Claimant reserves the right to hold the Respondents liable.* "[Emphasis added] The second Claimant disagrees with such claim. So far, the Respondents have not received the account information or further directions about Si Ji Hua Cheng jointly given by the two Claimants.

28

(4)      With regards to Order No.4 of the *Final Award*, to the knowledge of the Respondents, the Claimants have not fulfilled the Order so far to provide the audit report of Si Ji Hua Cheng.

(5)      With regards to Orders No.5, No.6 and No.7 of the *Final Award*, the first Claimant wrote to the Respondents many times from May to October 2018, requesting that the equity transfer of Si Ji Hua Cheng can only be carried out after the board members, legal representative and general manager of Si Ji Hua Cheng have been changed. For this reason, the first Claimant repeatedly requested the Respondents to change the governance structure and management personnel of Si Ji Hua Cheng (although the Respondents already handed over the control of Si Ji Hua Cheng to the two Claimants about eight years ago). From May to September 2018, the second Claimant repeatedly objected the first Claimant's proposal to change the directors and legal representative of Si Ji Hua Cheng. It shows that the equity transfer of Si Ji Hua Cheng cannot be advanced because of the different opinions and directions of the two Claimants and the failure of the two Claimants and Si Ji Hua Cheng to fulfill their cooperation obligations in time.

(6)      With regards to Order No.8 of the *Final Award*, the Order itself expressly indicates that the payment is to be made within 4 weeks after the implementation of Orders No.1-6, and therefore it has not been implemented.

(7)      With regards to Order No.9 of the *Final Award*, the Respondents have paid 50% of the amount to the first Claimant. Although the Respondents have made many requests to the second Claimant to provide a valid RMB account in China, the second Claimant has refused to provide a RMB account in China.

ASIA-DOCS\10768653.6

**E. Response statements of the first Claimant**

65.    In the response statements of the first Claimant, the first Claimant adopted the general statements of the second Claimant that the successful party should be paid the arbitration fees, and denied the claim of the Respondents that the arbitration fees should be bore by each party respectively.

66.    The claims of the first Claimant, and more importantly, some of the claims indicated by Respondents and recognized and supported by the arbitration tribunal, are in fact not the main factors leading to and triggering the commencement of this arbitration. Paragraphs 271 and 274 of the *Award* state that the arbitration tribunal finally determines that the Respondents have obviously violated the contractual obligations of Articles 2.3.1, 2.3.2 and 2.3.3 of the *4.28 Agreement*, so the Respondents are the breaching party. On the contrary, the arbitral tribunal has not ruled that the acts of so-called failure in cooperation or recognition of the Claimants, as indicated by the Respondents, were the breaches. The first Claimant holds the view that, as a result of this prejudice, the only reasonable award must be that the Respondents bear the arbitration fees as a consequence of losing.

67.    With regards to the four main points of the Respondents' alternative claims (see Paragraph 50 above), the first Claimant's responses to each point are as follows:-

(1) The expenses decided by the arbitration tribunal to be borne by one party or to be retained for apportionment

The first Claimant does not object to the basic claim that the relevant orders issued by the arbitral tribunal for the first Claimant to bear the expenses should be maintained; the first Claimant agrees that there is no reason the final award will be overturned or cause the need to re-process the order that the arbitration fees have been issued in respect of the intermediate application. On the contrary, the first Claimant objects the claim that the Respondents shall be entitled to the costs retained by the arbitral tribunal in respect of the expenses incurred by the second Claimant's application for the estate administrator. This application was the prelude to the final accession of the second Claimant's estate to this arbitration, and shall be handled together with the subsequent application and related matters.

(2) Expenses incurred by the two Claimants for using multiple counsels

The positions and claims of the first Claimant and his legal team in the arbitration from the very beginning have been confirmed in the final award; any so-called extra expenses can only be attributed to the representation expenses derived from the second Claimant's engagement of another legal team after the arbitration started. Therefore, the first Claimant holds that all the arbitration fees of one party should be borne by the Respondents. As mentioned above, the first Claimant keeps a neutral position about whether the legal team of the second Claimant should obtain the arbitration fees at the same time; however, this action has been approved by the arbitration tribunal, which does affect the arbitration fees that the first Claimant needs to continuously engage the same legal team from the start of court to handle entire arbitration. If necessary, the first Claimant alternately indicates that the first Claimant and the second Claimant, prior to his death, held mutual trust and had no conflicts. The legal team of the first Claimant was also initially commissioned by the second Claimant to represent the Claimants in the arbitration. The unfortunate death of the second Claimant was not the wish of the first Claimant, and the first Claimant has no control over the fact that the surviving spouse and daughter of the second Claimant did not cooperate with and did not trust the first Claimant. Throughout the development of the matter, the first Claimant had no inappropriate conducts that hold the first Claimant liable.

(3) Expenses incurred due to conflicts between the Claimants

31

With regards to the second Claimant's engagement of another legal team after the commencement of the arbitration, the Respondents only stated that the Respondents keep a neutral position or do not oppose regarding the applications by the Claimants. In essence, the Respondents did not and need not participate in it, far from needing special arbitration fees. The first Claimant objects the need to pay the Respondents the so-called expenses for this issue.

(4) <u>The relevant expenses incurred in the outcome of the award that the Respondents won or expected to be consistent with the Respondents' request in the case</u>

It is mainly divided into three items. (i) The replacement of the arbitrator was actually a matter of the arbitration procedures. The first Claimant has no control over the fact that one of the arbitrators left after the final award was issued, and the objection claimed by the first Claimant also had evidentiary basis. The first Claimant considers that the appropriate arbitration fees are attributed to the case through the order. (ii) With regards to the application for interpretation, correction and supplementation, the arbitral tribunal did accept some of the requests of the Claimants and also confirmed the needs of the application; however, the position of the Respondents in each objection was the main factor that made the application complicated. The first Claimant also considers that the appropriate arbitration fees are attributed to the case through the order. (iii) Finally, the first Claimant also reiterates the above statements to refute the claim that the Respondents was so-called recognized and supported by the arbitral tribunal and that each Claimant shall bear their own expenses. The Respondents failed to provide any special reason for the arbitral tribunal to divide the arbitration fees for these individual claims.

68. With regards to the claim of the second Claimant for the arbitration fees of some intermediate procedures, the basic position of the first Claimant is that since the second Claimant insisted on continuing to participate in the arbitration at the beginning together with the first Claimant as the Claimants, in principle, the second Claimant waived the right to recover the arbitration fees from the first Claimant. The first Claimant also refuted each of the second Claimant's claims for the intermediate procedure expenses.

ASIA-DOCS\10768653.6

**F. Response statements of the second Claimant to arbitration fees and interest**

69. Key points of the second Claimant in the response statements are as follows:

(1)      The case of the principle for the arbitration fees cited by the Respondents (i.e., **AEI Rediffusion Music Ltd v. Phonographic Performance Ltd**) does not apply to this case at all, because the case was about the exercise of special discretion granted by law by the UK Intellectual Property Office. There is a clear case in Hong Kong that the special discretion mentioned in the **Rediffusion** case does not apply to ordinary civil and commercial disputes;

(2)      The claims that the positions taken by the Respondents in this arbitration are reasonable are not consistent with the facts at all. It is shown in the evidence and statements presented by the parties during the arbitration and in the final award that the Respondents have always raised objections to the important items in the *4.28 Agreement*, such as the equity consideration, debt settlement and audit report, and none of their arguments and evidence have been accepted by the arbitration tribunal;

(3)      The Respondents claim that the first and second Claimants caused additional costs to arise from their conflicts and engagement of legal representation teams by phases, which shall be borne by the Claimants. This argument completely ignores the fact that the arbitral tribunal has made appropriate orders on the engagements of attorneys by the first and second Claimants, respectively. Before and after the orders were issued, no objection was raised by the Respondents. Therefore, it is unfair to the Claimants and contradictory to the Respondents' position that the Respondents request the Claimants to bear the arbitration fees for the above reasons after losing the case. In addition, the second Claimant has clearly stated in the statements for the arbitration fees and interest that the second Claimant has been making efforts to provide reasonable, effective and appropriate assistance to the arbitral tribunal under the representation of the attorneys, with the arguments and evidence thereof accepted by the arbitral tribunal, so the arbitration fees shall be granted;

ASIA-DOCS\10768653.6

(4)      With regards to the interest, the Respondents refuse to perform the *4.28 Agreement*, so the Claimants have not been able to enjoy the money and rights and interest under the agreement. As the unsuccessful party, the Respondents shall undoubtedly pay the interest to the Claimants to compensate the loss of the Claimants.

70. The second Claimant discussed the above four key points in the other parts of his response statements. The arbitration tribunal has read them carefully, so there is no need to repeat here.

**G. Response statements of the Respondents to arbitration fees and interest**

71. In the response statements of the Respondents, the key points are as follows:

(1)      The first Claimant fails to comply with the order of the arbitration tribunal to submit a list of the costs as the evidence for the arbitration fees, which makes it impossible for the arbitration tribunal to assess the reasonableness of the costs. Obviously, in the amount of RMB 28 million claimed by the first Claimant, at least the expenses to be borne by the first Claimant as determined by the arbitral tribunal has not been deducted, which shows that the claim of the first Claimant is unreasonable. Therefore, the arbitration tribunal shall reject the claim of the first Claimant for the costs, support the claim of the Respondents, and rule that each party shall bear their own arbitration fees.

(2)      To make a concession, alternatively, if the arbitration tribunal considers that it is necessary to make other decisions regarding the arbitration fees, then the Respondents claim that, in this case, the time and costs of the proceedings are significantly increased due to reasons such as the conflicts between the Claimants, and the Respondents shall not bear the following expenses:

(i)      The expenses that have been decided by the arbitration tribunal to be borne by the first Claimant;

ASIA-DOCS\10768653.6

(ii)     The expenses incurred by the first Claimant to resolve the conflicts between the Claimants;

(iii)    The expenses incurred by the first Claimant in the matters that the Respondents obtained support (including the Claimant's objection and question to the substitute arbitrator, the Claimant's interpretation, correction and supplementation, etc.); and

(iv)    Half of the costs incurred during the period before the second Claimant engaged another counsel

72. With regards to the claim of the first Claimant for interest, the Respondents claim that the interest shall not be supported for the reasons in Paragraphs 51-55 of the *Statements of the Respondents for Arbitration fees and interest*. To make a concession, if the arbitration tribunal considers that the Respondents need to pay interest for the third installment payment, then (1) the principal in the interest calculation shall be adjusted to RMB 22,289,896, (2) the interest shall be simple interest (the interest rate shall be HKBOR + 2%), and (3) the applicable period shall be 36 months.

73. With regards to the *Statements of the Second Claimant for Arbitration fees and interest*, the Respondents hold the opinions that:

(1)     Firstly, with respect to the costs claimed by the second Claimant, the Respondents consider that it is unnecessary for the second Claimant to engage a counsel, and the second Claimant has no right to request the Respondents to bear such costs.

(2)     To make a concession, even if it is necessary and/or reasonable for the second Claimant to engage an agent (denied by the Respondents), the Respondents shall not bear all the costs arising therefrom. The arbitral tribunal shall consider the additional costs incurred from the one counsel if the two Claimants engaged only one counsel and only support such additional costs (for example, referring to the case of Eric Edward, 10% of the costs reasonably incurred by the second Claimant is supported).

(3)     Secondly, with regards to the claim of the second Claimant for calculation of interest (especially the claim for compound interest), the Respondents consider that the claim shall not be supported. For the reasons stated in Paragraphs 51-55 of the *Statements of the Respondents for Arbitration fees and interest*, the Respondents claim that the arbitral tribunal shall rule that the Respondents are not required to pay interest to the Claimants.

(4)     To make a further concession, if the arbitration tribunal considers that the Respondents are required to pay interest for the third installment payment, the interest shall not be calculated by the compound interest claimed by the second Claimant. If the arbitration tribunal considers that the Respondents are required to pay interest for the third installment payment, then (1) the principal for calculating the interest shall be adjusted to RMB 22,289,896, (2) the interest shall be simple interest (the interest rate shall be HKBOR + 2%), and (3) the applicable period shall be 36 months.

## H. Analysis and grounds of the arbitration tribunal

## Apportionment of arbitration fees

74.     With regards to the issues related to the arbitration fees and interest, the parties have made a lot of written statements, which involved many details and disputes. In the opinions of the arbitral tribunal, injustice may arise if the issues related to the arbitration fees and interest are dealt with in a microscopic way, and it is more appropriate and fair to determine the way to apportion the arbitration fees and the interest from a macroscopic perspective.

75.     In the opinion of the arbitration tribunal, it is impractical in the claim of the second Claimant and the Respondents to list the intermediate procedures one by one and request the arbitration tribunal to confirm the expenses incurred from the intermediate procedures and to order the apportionment of the expenses incurred.

76.     From a macroscopic perspective, the arbitral tribunal classifies the arbitration fees into the following three categories:

(1) Fees for the arbitral tribunal;

(2) Fees for HKIAC; and

ASIA-DOCS\10768653.6

(3) The attorney's fees for the parties (including fees for attorneys and barristers).

77. After reviewing to the statements of the parties and the cases cited, the arbitral tribunal holds the opinion that there are several principles applicable to this case in terms of the arbitration fees, namely:

(1) The arbitration tribunal has a high level of discretion to decide how to apportion the costs;

(2) The exercise of the discretion must be in accordance with the justice of laws rather than random or arbitrary;

(3) Generally speaking, the unsuccessful party shall bear the costs of the successful party. The right to costs cannot be denied simply because some claims made by the successful party are not supported.

78.      In this case, the claims of the Respondents have been supported by the arbitration tribunal for some issues (for example, the issue of salary expenses between January and November 2009 for Ke Zhengguang and Xu Hongbiao, the interest generated by Oasis Investment and its subordinate companies for occupying the funds of Si Ji Hua Cheng, and the interest for the unpaid items of the controlling shareholders), but the Respondents is the unsuccessful party in the procedure as a whole.

79.      Therefore, the arbitration tribunal holds the opinion that the Respondents shall bear the arbitration costs of the Claimants.

80.      However, the arbitration tribunal has to further consider whether the Respondents should bear the arbitration fees of one or two Claimants.

81.      Under the laws of Hong Kong, the general legal principle is that if there are joint plaintiffs in a case, the joint plaintiffs shall be represented by the same counsel in the absence of conflicts of interest and differences of opinions. See **Lewis v. Daily Telegraph (No 2)** [1964] 2 QB 601 and **Ong v. Ping** [2015] 6 Costs LR 997. In this case, the first Claimant and the second Claimant are represented by different law firms (and barristers), respectively. The reasons have been described and explained in the final award (excluding the arbitration fees and interest).

82.     Under such circumstances, the arbitral tribunal allowed the two Claimants to engage different attorneys. At that time, the position of the second Claimant was that the counsel of the second Claimant would attend the court session as an observer. However, in the actual court session, the attorney of the second Claimant participated in the whole session. Moreover, there was no substantive difference between the positions of the second Claimant and that of the first Claimant at the session. In fact, the reason that the two parties could not engage the same law firm previously stated no longer existed.

83.     In addition, the position of the second Claimant in the case in the session was to a large extent the same as that of the first Claimant.

84.     Taking these factors into account, the arbitral tribunal holds the opinion that it was inappropriate and unreasonable to request the Respondents to bear the attorney's fees of two Claimants. The arbitral tribunal also holds the opinion that most of the work of the teams of attorneys of the first Claimant and the second Claimant was repeated.

85.     Therefore, a more equitable approach is to give an appropriate discount for attorneys' fees for the first Claimant and the second Claimant. After comprehensive considerations, the arbitral tribunal holds the opinion that the reasonable discount rate is 40%. In other words, the Respondents only need to bear 60% of the attorney's fees of the first Claimant and 60% of the attorney's fees of the second Claimant.

86.     With regards to the fees for the arbitration tribunal and HKIAC, there are no issue of repeated work like the attorney's fees. However, taking into account during the applications in some intermediate procedures, the arbitral tribunal ordered the Claimants to bear the expenses of the Respondents. After comprehensive considerations, the arbitration tribunal considers that the Respondents shall bear 80% of the total fees for the arbitration tribunal and HKIAC, while the first and second Claimants shall bear 20% of the fees for the arbitration tribunal and HKIAC.

87.     Paragraphs 81 to 83 above reflect not only the general principle of apportionment of costs, but also the individual directions previously made by the arbitral tribunal for the apportionment of fees for certain applications.

88.    As for the amount of the attorney's fees, the first Claimant only claimed the total amount of HK$ 28,000,000 in the *Statements of the First Claimant for Arbitration fees and interest*, but did not provide any details or evidentiary supports. Later, in the response statements of the first Claimant, Attachment I was provided, but Attachment I only listed the expenses, and the bills or other evidence were not attached.

89.    In view of this situation, the arbitral tribunal is unable to determine whether the total amount reported by the first Claimant is reasonable. The arbitral tribunal can only make references to the attorney's fees of the second Claimant for evaluation. The total amount of the attorney's fees of the second Claimant (including the fees of the barrister) is HK$ 13,177,356.20. Judging by the amount of the attorney's fees provided by the second Claimant, the amount of the attorney's fees of the first Claimant seems to be twice that of the second Claimant. Although the attorneys of the first Claimant started involvement in the arbitration earlier than the attorneys of the second Claimant, the arbitral tribunal holds the opinion that the amount should not exceed twice of the attorney's fees of second Claimant.

90.    Based on a more conservative estimation, the amount of reasonable attorneys' fees assessed by the arbitral tribunal for the first Claimant should not exceed HK$ 15,000,000.

91.    By analogy, the amount of attorney's fees of the first and second Claimant to be borne by the Respondents is HK$ 9,000,000 and HK$ 7,800,000 respectively.

92.    The second Claimant also made another claim that the first Claimant must bear the arbitration fees of the second Claimant for certain issues, as stated in Paragraph 35 above. The arbitration tribunal holds the opinion that the main reason for these issues was the unfortunate death of Mr. Ke Zhengguang after the commencement of the arbitration, after which his surviving spouse and daughter had opinions on handling the case different from Xu Hongbiao, the first Claimant. The arbitral tribunal did not have enough evidence to determine which party should be responsible for the issue (also, this issue was not related to the case involved), so it did not support this claim of the second Claimant.

**Interest**

39

93. With regards to the interest, the parties have the following differences:

(1) Calculation of the principal;

(2) Calculation of the period;

(3) Issues about the interest rate;

(4) Simple interest or compound interest.

94. With regards to the principal, the amount claimed by the first Claimant should be RMB 150 million.

95. The amount claimed by the second Claimant is the interest generated by one half of RMB 150 million less RMB 41,244,613.21 plus RMB 30 million and the amount in Order No.9 (RMB 10,346,211), respectively. According to the method for calculation claimed by the second Claimant, one-half of RMB 149,101,597.79 is obtained, that is, RMB 74,550,798.89.

96. The principal claimed by the Respondents should be RMB 22,289,896 (refer to Paragraph 56 above).

97. The arbitration tribunal holds the opinion that except for the deduction of RMB 41,244,613.21 (the undisputed amount of the carryover current accounts that the Claimants should bear) and RMB 3,127,591.77 (the salary expenses of Mr. Ke Zhengguang and Mr. Xu Hongbiao from January to November 2009), the remaining amount claimed by the Respondents that should be deducted and RMB 30,000,000 should not be included in the scope of interest calculation could not be supported.

98. Therefore, the amount of the principal should be RMB 149,101,597.79 less RMB 3,127,591.77 = RMB 145,974,006.

99. With regards to the period for interest, the first Claimant claims that the interest from December 31, 2012 to the date of actual payment shall be paid.

ASIA-DOCS\10768653.6

100. With regards to the period for interest, the second Claimant claims that the period shall be from the date of expiration of performance under the *4.28 Agreement* to the date when the arbitral tribunal made an award. With regards to Order No.8, under the Article 2.2.1 (3) of the 4.28 Agreement, the calculation shall start from December 31, 2012 and end on February 28, 2018, which was the date of final award. With regards to Order No.9, the calculation shall start from August 8, 2017 and end on February 28, 2018, which was the date of the final award.

101. The period claimed by the Respondents is 36 months (See Paragraph 58 above).

102. The arbitration tribunal holds the opinion that the method of calculation of the Respondents is reasonable and adopted.

103. With regards to the interest rate, the arbitration tribunal holds the opinion that the most appropriate interest rate is the most preferential loan interest rate of HSBC plus 1%. The interest rate is applicable before and after the arbitration award until the Respondent makes payment. The amount of principal for calculating the interest is RMB 145,974,006. Under the Article 80 (1) of the Arbitration Ordinance, the interest is payable on money awarded by an arbitral tribunal from the date of the award at the judgment rate, except when the award otherwise provides. This means that the arbitral tribunal may, at its discretion, determine the interest to be paid for the amount awarded not at the judgment rate (currently 8% per annum). In this case, considering the relatively long time from the date of the award to the final award for the arbitration fees and interest, the arbitration tribunal decided that a more reasonable approach should be to adopt the most preferential loan interest rate of Hong Kong HSBC plus 1% as the applicable interest rate after the arbitration award until the Respondents pay off the money.

104. With regards to whether the interest should be calculated by simple interest or compound interest, the claim of the second Claimant is that it should be calculated by compound interest. In the opinion of the arbitral tribunal, the interest shall not be calculated by way of compound interest unless under special circumstances. There is no special circumstance in this case, so the arbitration tribunal does not support the claim of the second Claimant.

**I. Orders of the arbitral tribunal for arbitration fees and interest**

105. The arbitral tribunal makes the following orders:

106. The Respondents shall pay the first Claimant HK$ 9,000,000 for attorney's fees and HK$ 4,961,030 for arbitration fees (including the fees for the arbitral tribunal and the fees for HKIAC).

107. The Respondents shall pay the second Claimant HK$ 7,800,000 for attorney's fees and HK$ 4,961,030 for arbitration fees (including the fees for the arbitral tribunal and the fees for HKIAC).

108. With regards to Orders No.8 and No.9 in the final award of the arbitral tribunal (excluding the arbitration fees and interest), the Respondents shall pay the interest. The method to calculate the interest is as follows: Simple interest with the principal amount of RMB 145,974,006 multiplied by the interest rate which is the most preferential loan interest rate of HSBC in Hong Kong plus 1%.

109. All other claims of the parties are rejected.

Issued on March 16, 2020

Seat of the Arbitration: Hong Kong

ASIA-DOCS\10768653.6

[Signature of Huang Xulun]            [Signature of Wang Xuehua]

_____    _____

Huang Xulun, Senior Barrister          Mr. Wang Xuehua
Arbitrator                    Arbitrator


[Signature of Yang Yanlong]      [Official Seal]:

_____

Mr. Yang Yanlong       Hong Kong International Arbitration Centre
Chief Arbitrator on behalf of the Arbitral Tribunal

ASIA-DOCS\10768653.6